## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JEREMY LYON,<br><br>     Plaintiff,<br><br>  v.<br><br>ASSOCIATED BAPTIST PRESS, INC.<br>d/b/a BAPTIST NEWS GLOBAL,<br><br>     Defendant. | Case No.<br><br>**COMPLAINT FOR DEFAMATION**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff JEREMY LYON ("Plaintiff" or "Dr. Lyon"), and states his Complaint for Defamation against Defendant ASSOCIATED BAPTIST PRESS, INC. d/b/a BAPTIST NEWS GLOBAL ("BNG"), as follows:

### PARTIES

1.     Plaintiff Lyon is a citizen of the State of Georgia, who resides in White County, Georgia.

2.     Defendant BNG is a citizen of the State of Florida. BNG is incorporated as a Florida not-for-profit corporation with its principal place of business and registered agent, Lindsay Bergstrom, located at 8902 Elizabeth Falls Drive, Jacksonville, Florida, 32257.

## JURISDICTION AND VENUE

3.      There exists complete diversity of citizenship between Plaintiff and Defendant BNG.

4.      The amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

5.      Therefore, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

6.      Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §§ 1391(b)-(c) because Plaintiff Lyon resides in this judicial district, and this District is where the brunt of the harm to Dr. Lyon was felt.

7.      This Court has personal jurisdiction over Defendant BNG pursuant to O.C.G.A. § 9-10-91 because BNG transacts business within the State of Georgia sufficient to anticipate being haled into court in the State of Georgia.

8.      This Court further has personal jurisdiction over Defendant BNG because, according to the annual report filed with the Florida Secretary of State for Associated Baptist Press, Inc., the Chairman of its Board, Larry Brumley, resides in Macon, Georgia.

9.      This Court further has personal jurisdiction over Defendant BNG because its defamation of Plaintiff has been directed specifically toward the State of Georgia, as well as Dr. Lyon specifically.

10.     Defendant BNG employs an author, Joe Westbury, who resides in the State of Georgia. *See, e.g.*, https://baptistnews.com/article/author/joewestbury/ (last visited Dec. 22, 2025).

11.     Westbury wrote the two articles at issue in this Complaint that were published by BNG, both of which focus on events occurring at Truett McConnell University ("TMU"), a college located in Cleveland, Georgia, and Plaintiff Lyon's former employer. *See Truett-McConnell trustees to meet as sexual abuse scandal worsens*, Baptist News Global (Jun. 5, 2025), https://baptistnews.com/article/truett-mcconnell-trustees-to-meet-as-sexual-abuse-scandal-worsens/ [https://perma.cc/297D-NBND] ("June 5 Article"); *Truett McConnell faculty chairs went straight to trustees*, Baptist News Global (Jun. 13, 2025), https://baptistnews.com/article/truett-mcconnell-faculty-chairs-went-straight-to-trustees/ [https://perma.cc/MMY5-8387] ("June 13 Article").

12.     Westbury has written a number of additional articles published by BNG regarding TMU, again focused and directed at the State of Georgia. *See, e.g.*, *In Georgia, a Baptist school accused of ignoring sexual abuse despite a mountain of evidence*, Baptist News Global (Jun. 1, 2025), https://baptistnews.com/article/in-

georgia-a-baptist-school-accused-of-ignoring-sexual-abuse-despite-a-mountain-of-evidence/ [https://perma.cc/6JL5-7TP4]; *Caner on leave as Truett McConnell trustees investigate abuse claims*, Baptist Global News (Jun. 6, 2025), https://baptistnews.com/article/caner-on-leave-as-truett-mcconnell-trustees-investigate-abuse-claims/ [https://perma.cc/G3KR-BNUK]; *Caner removed as Truett-McConnell president*, Baptist News Global (Sept. 27, 2025), https://baptistnews.com/article/caner-removed-as-truett-mcconnell-president/ [https://perma.cc/3WHK-KZXU].

13.     The June 5 Article and the June 13 Article (together, the "Articles"), purport to rely on numerous Georgia residents as sources.

14.     Sufficient contacts exist with respect to Defendant, its business, and the claims at issue in this case to satisfy the requirements of due process as to Defendant.

## **FACTUAL ALLEGATIONS**

### **Baptist News Global**

15.     Defendant BNG claims it is an "independent news organization" that publishes "news, opinion and analysis" on its website, www.baptistnews.com.

16.     According to BNG, it is the product of a merger between Associated Baptist Press, "founded in 1990 as the only independent news service created by and for Baptists," and *The Religious Herald*, "one of the earliest Protestant newspapers in the United States . . . founded in 1828 as the voice of Baptists in Virginia."

17.    BNG claims "[t]o pursue truth through responsible journalism."

18.    BNG purports to provide "timely releases of news and feature stories relating to Baptist interests at the local, state and national levels."

19.    Baptists represent the largest Protestant denomination in the United States, with an estimated 12% of the adult population of the United States identifying as Baptist according to a 2023-2024 Pew Research Center study.

20.    BNG provides "original and curated news, opinion and analysis about matters of faith to more than 4.5 million readers annually."

21.    BNG reportedly had over 20 million page views between 2010 and 2019.

22.    In 2024, BNG reportedly had 5.2 million page views.

23.    BNG's over 4.5 million readers annually include:

- "pastors, staff and other key leaders in more than 4,500 churches nationwide,"

- "students and faculty at faith-based universities, theology schools and seminaries,"

- "leaders of organizations affiliated with national and regional Baptist networks and other Christian groups," and

- "Christian women and men who are influencers in their communities."

24.    In addition to content published on its website, BNG offers various e-newsletters, including *The Daily*, *The Friday Roundup*, *Trending*, *Breaking News*, and *BNG Info Only*.

25.    TMU, a private Christian liberal arts and sciences university, is an expected focus of BNG's reporting. TMU was founded by the Georgia Baptist Convention and is "operated under the auspices of the Georgia Baptist Mission Board and controlled by a Board of Trustees elected by the [Georgia Baptist] Convention." https://truett.edu/about/who-we-are/ (last visited Dec. 22, 2025).

**Dr. Jeremy Lyon**

26.    Dr. Lyon is a well-known biblical scholar.

27.    Dr. Lyon received his B.A. in Religion from Carson-Newman College in 2003, a M.Div. in Advanced Biblical Studies and Biblical Languages from Southeastern Baptist Theological Seminary in 2007, and a Ph.D. in Old Testament from Southeastern Baptist Theological Seminary in 2014.

28.    As part of his Ph.D. program, Dr. Lyon spent several months at the University of the Holy Land in Israel studying the Dead Sea Scrolls.

29.    From 2011 to 2014, Dr. Lyon served as an adjunct instructor for Liberty University's School of Religion Online.

30.    From 2012 to 2014, Dr. Lyon served as full-time Professor of Old Testament at Southern California Seminary, where he founded and directed the Center for Creation Studies.

31.    Dr. Lyon subsequently served as an Adjunct Professor at Southern California Seminary from 2018 to 2025.

32.    From 2014 to 2025, Dr. Lyon was Associate Professor of Old Testament and Hebrew at TMU.

33.    From 2021 to 2025, Dr. Lyon was an Adjunct Professor at Calvary University.

34.    Dr. Lyon was featured in the 2017 documentary/movie *Genesis: Paradise Lost*.

35.    Dr. Lyon founded and was President of the Creation Theology Society from 2020 to 2025.

36.    Dr. Lyon has published books, including *The Genesis Creation Account in the Dead Sea Scrolls* (2019) and *Qumran Interpretation of the Genesis Flood* (2015).

37.    Dr. Lyon has published numerous articles and given many academic presentations and public lectures.

38.    Dr. Lyon has served on the editorial boards of several publications and served as a journal article reviewer.

**<u>Defamatory Articles</u>**

39.    The Articles are two in a series of articles written by Westbury and published by Defendant BNG concerning a sexual abuse scandal at TMU involving former TMU Vice President Bradley Reynolds ("Reynolds").

40.     Dozens of media outlets, including mainstream media such as *The Associated Press*, *Atlanta Journal-Constitution*, *NBC, CBS News,* and *Fox5 Atlanta* have published articles about the allegations concerning Reynolds, but none of those entities have accused Dr. Lyon of being involved in the scandal.

41.     Defendant published the June 5 Article on its website and via a link in a post on the social media site, X (formerly Twitter). *See* Baptist News Global (@baptist_news),    X    (Jun.    5,    2025,    at    13:00    ET), https://x.com/baptist_news/status/1930655975142285411 [https://perma.cc/W2EX-6STM]. The June 5 Article is available on BNG's website and via the link on X as of the date of filing this Complaint.

42.     The June 5 post on X includes the text: "'We have personally prayed for her healing and are thankful for her voice.'"

43.     Defendant published the June 13 Article on its website and via a link in a post on X. *See* Baptist News Global (@baptist_news), X (Jun. 13, 2025, at 17:00 ET),                https://x.com/baptist_news/status/1933630518928568334 [https://perma.cc/CMZ4-YL3U]. The June 13 Article is available on BNG's website and via the link on X as of the date of filing this Complaint.

44.     The June 13 post on X includes the text: "Certainly no one expected to find a sexual predator at Truett McConnell." *Id.*

45.     The June 5 Article features a photograph of Dr. Lyon with his name and title at TMU, as well as a salacious "pull quote" in large red type:

**Lyon allegations**

Also new is the expansion of the law firm's complaint to include Jeremy Lyon, who as recently as February was listed on the university website as an associate professor of Old Testament and Hebrew but whose name no longer appears on the faculty page. This second complaint by a second student is among nine known cases, according to the law firm.

"At least nine women are known to have suffered emotional trauma as a result of the sexual abuse and harassment; however, at this time, only two are bold and courageous enough to step forward," the firm said.



**Dr. Jeremy Lyon**

**Associate Professor, Old Testament & Hebrew**

*February 2025 posting from Truett McConnell faculty website*

Due to privacy concerns, the law firm's letter only refers to the second student as Jane Doe in the relationship with Lyon, but says she is willing to be interview by unbiased actors.

The document states that Caner "looked the other way, failed to act, or was willfully blind, thereby allowing the inappropriate conduct and harm to continue on campus. TMU failed to protect the two victims who were entrusted to their care and, as a result, these young women will carry emotional scars for the duration of their lives."

The document details an encounter Jane Doe had with Lyon on Oct. 20, 2021, when she was a sophomore. The alleged incident occurred late one evening when she was working out alone in the gym in the Student Life Building. After a couple of uncomfortable conversations initiated by Lyon — with whom she had no classes and had not previously met — Lyon approached once again, pressed his body against hers and she could feel he was sexually aroused, she said.

She broke off the encounter and as she was preparing to leave, Lyon placed his hands on her waist and said he did not mean to upset her. She immediately pulled away and left.

Her roommate, upon hearing the account the next morning, reported the incident to the Student Life director on behalf of the still-disturbed Doe, who soon thereafter met with the director in person. On Oct. 26, Doe met with Title IX Coordinator Amy Harbst, who said the incident "was not acceptable at their university."

**Lyon approached once again, pressed his body against hers and she could feel he was sexually aroused, she said.**

Two days later, Doe was informed camera footage from the gym validated her statement.

She was told she had 90 days to file a complaint but was urged to consider carefully the harm she might do to Lyon and his family as well as her own future. Harbst said before the statement could be filed, Doe would have to explain to Lyon what he did to "hurt her." Doe said her fear of being alone with Lyon would be too uncomfortable so she dropped the matter.

Doe said no one from the university ever followed up with her concerning the incident.

46.     The June 5 Article includes the following **false** statements about Dr.

Lyon:

a) Headline: "Truett-McConnell trustees to meet as sexual abuse scandal worsens"

b) "A 13-page letter from the firm states both Reynolds and former faculty member Jeremy Lyon utilized their positions 'to access and then harm, emotionally and mentally, at least two female students.'"

c) "Also new is the expansion of the law firm's complaint to include Jeremy Lyon...."

d) "This second complaint by a second student is among nine known cases, according to the law firm."

e) "'At least nine women are known to have suffered emotional trauma as a result of the sexual abuse and harassment; however, at this time, only two are bold and courageous enough to step forward,' the firm said."

f) "Due to privacy concerns, the law firm's letter only refers to the second student as Jane Doe in the relationship with Lyon...."

g) "The document details an encounter Jane Doe had with Lyon on Oct. 20, 2021, when she was a sophomore. The alleged incident occurred late one evening when she was working out alone in the gym in the Student Life Building. After a couple of uncomfortable conversations initiated by Lyon – with whom she had no classes and had not previously met – Lyon approached once again, pressed his body against hers and she could feel he was sexually aroused, she said."

h) "She broke off the encounter and as she was preparing to leave, Lyon placed his hands on her waist and said he did not mean to upset her. She immediately pulled away and left."

i) "Her roommate, upon hearing the account the next morning, reported the incident to the Student Life director on behalf of the still-disturbed Doe, who soon thereafter met with the director in person. On Oct. 26, Doe met with Title IX Coordinator Amy Harbst, who said the incident 'was not acceptable at their university.'"

j) "Two days later, Doe was informed camera footage from the gym validated her statement."

k) "She was told she had 90 days to file a complaint but was urged to consider carefully the harm she might do to Lyon and his family as well as her own future. Harbst said before the statement could be filed, Doe would have to explain to Lyon what he did to 'hurt her.' Doe said her fear of being alone with Lyon would be too uncomfortable so she dropped the matter."

l) "Doe said no one from the university ever followed up with her concerning the incident."

m) Conveying the gist that Dr. Lyon is part of "the sexual abuse scandal" involving Reynolds

n) Conveying the gist that Dr. Lyon engaged in "sexual abuse" and/or "harassment."

(collectively, the "June 5 Statements").

47.    The juxtaposition of the June 5 Statements with the bold heading "Lyon allegations," Dr. Lyon's photograph identifying him by name, and the pull quote tie all of those statements directly to Dr. Lyon and, as a result, even where he is not specifically mentioned, he is understood to be the individual being discussed.

48.    The June 13 Article includes the following false statements about Dr. Lyon:

a) "Meanwhile, a second faculty member, Jeremy Lyon, since has been accused of sexual abuse of a student late one night in the campus gymnasium."

b) "Together, these allegations rocked the small North Georgia community that is home to the small evangelical school…."

c) Conveying the gist that Dr. Lyon is part of a "sexual abuse scandal"

-11-

d) Conveying the gist that Dr. Lyon participated in behavior similar to Reynolds.

(collectively, the "June 13 Statements").

49.    The June 5 Statements and the June 13 Statements (collectively, the "Statements"), convey the false and defamatory accusation that Dr. Lyon committed sexual abuse and/or harassment against one or more students, that Dr. Lyon is part of the scandal involving alleged sexual abuse of multiple TMU students, and that Dr. Lyon is part of the purported failure of TMU administration to properly investigate the alleged sexual abuse.

50.    No one has ever contacted, or attempted to contact, Dr. Lyon to interview or question him about any of the Statements in the Articles.

51.    At no point prior to reading the June 5 Article had Dr. Lyon received any notice that anyone had ever made the accusations against him that were made in the June 5 Article.

52.    Dr. Lyon categorically denies the Statements in the Articles.

53.    Defendant BNG falsely attempted to bolster its source by claiming that it was relying on "a law firm," when in fact no law firm conveyed that Dr. Lyon is part of the sexual abuse scandal at TMU, that Dr. Lyon has been accused of committing any acts similar to those allegedly committed by Reynolds, or that any complaint is being pursued against Dr. Lyon for any alleged sexual harassment or abuse.

54.     On July 31, 2025, Dr. Lyon sent correspondence to BNG demanding that it retract and take down the Statements in the Articles. On September 22, 2025, Dr. Lyon again demanded that BNG take down and retract the Statements in the Articles.

55.     BNG failed and refused to take down or retract any of the Statements or the Articles.

<u>**CAUSE OF ACTION**</u>

**COUNT ONE:  DEFAMATION**

56.     Plaintiff incorporates by reference paragraphs 1 through 55 of this Complaint as if fully stated herein.

57.     On June 5, 2025, Defendant BNG published the June 5 Article on its website and via a link on X (formerly Twitter).

58.     The June 5 Article contains the previously identified June 5 Statements.

59.     On June 13, 2025, Defendant BNG published the June 13 Article on its website and via a link on X (formerly Twitter).

60.     The June 13 Article contains the previously identified June 13 Statements.

61.     The Statements are of and concerning Plaintiff.

62.     The Statements are false.

63.     The Statements are defamatory.

64.    Defendant BNG published the Statements negligently and with actual malice, *i.e.*, knowledge that the Statements were false or with reckless disregard for their falsity.

65.    Defendant BNG knew that the Statements were false, including because it fabricated information to support the false and defamatory accusations against Plaintiff.

66.    Defendant BNG knew or should have known that the Statements were false, including because BNG had no reliable source for the false accusations that Dr. Lyon is involved in a sexual abuse scandal.

67.    Defendant BNG negligently and recklessly published the Statements, including by failing to conduct a reasonable investigation prior to publication by, without limitation, failing to consider or knowingly disregarding evidence that was available to it.

68.    Defendant BNG negligently and recklessly published the Statements, including by falsely portraying the Articles as reporting "allegations being made by a law firm representing a woman against Dr. Lyon."

69.    Defendant BNG falsely attempted to bolster its only source by claiming the allegations were being conveyed by "a law firm" that submitted a "complaint" to TMU.

70.    There is no law firm "representing a woman against Dr. Lyon."

-14-

71.     No "complaint" has been asserted by any law firm against Dr. Lyon.

72.     Defendant BNG negligently and recklessly published the Statements, including by relying on unreliable and/or anonymous sources.

73.     For instance, Defendant BNG purports to have relied upon double or triple hearsay from an admittedly anonymous source, Jane Doe.

74.     Defendant BNG had reason to doubt its source, including because of inaccuracies such as misspelling Plaintiff's name and incorrectly characterizing Plaintiff as a "former professor."

75.     Defendant BNG negligently and recklessly published the Statements, including by relying on claimed sources with a known bias against Dr. Lyon and TMU.

76.     Defendant BNG negligently and recklessly published the Statements, including by manufacturing facts to fit a preconceived narrative about the sexual abuse scandal at TMU.

77.     Defendant BNG negligently and recklessly published the Statements by burying its head in the sand, *i.e.*, engaging in a purposeful avoidance of the truth, by, without limitation, failing to contact Dr. Lyon prior to publication to confirm the truth or falsity of the Statements.

78.     Defendant BNG negligently and recklessly published the Statements via a purposeful avoidance of the truth by, without limitation, failing to conduct

interviews of other obvious sources besides Dr. Lyon, despite its purported reliance on hearsay from an anonymous source.

79.    For instance, despite claiming that Jane Doe "says she is willing to be interviewed by unbiased actors," upon information and belief, BNG failed to interview Jane Doe or her purported roommate.

80.    Defendant BNG negligently and recklessly published the Statements via a purposeful avoidance of the truth by, without limitation, failing to obtain and review the video footage referenced in the June 5 Article.

81.    Upon information and belief, Defendant BNG further failed to seek information from TMU, which would have demonstrated the falsity of the Statements in the Articles.

82.    The Statements accusing Dr. Lyon of sexual abuse and abuse of his faculty position constitute defamation per se, for which compensatory damages are presumed as a matter of law.

83.    Dr. Lyon has suffered actual damages as a direct result of the Statements about him, including to his reputation.

84.    Dr. Lyon has suffered actual damages as a direct result of the Statements about him, including lost income.

85.    Dr. Lyon's lost income as a direct result of the Statements in the Articles has been caused by:

      a.      Termination of his contract as Adjunct Professor with Southern California Seminary;

      b.      Termination of his contract as Adjunct Professor with Calvary University; and

      c.      Termination of the hiring process in which he was seeking a position as Adjunct Professor at Grand Canyon University.

86.    Additionally as a direct result of the Statements in the Articles, Dr. Lyon has suffered damage to his academic credibility and future career prospects, including by:

      a.      Removal as President of the Creation Theology Society;

      b.      Removal of certain podcasts that were previously published on the internet; and

      c.      Removal of certain articles that were previously published on the internet.

87.    Dr. Lyon's damages continue to increase, as he is unable to find work in his professional field as a result of the Statements in the Articles and instead is currently working in retail at a significantly reduced income.

88.    Dr. Lyon also has suffered actual damages as a direct result of the Statements about him in the form of emotional and mental distress.

89.    Dr. Lyon is entitled to an award of compensatory damages against Defendant BNG in an amount to be proven at trial.

90.    Defendant BNG published the Statements with actual malice and common law malice, thereby entitling Plaintiff to an award of punitive damages.

91.    Defendant's conduct in publishing the Statements was outrageous and willful, demonstrating that entire want of care that raises a conscious indifference to consequences.

92.    Plaintiff is entitled to an award of punitive damages against Defendant BNG under O.C.G.A. § 51-12-5.1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff the following relief against Defendant BNG:

A.    Compensatory damages in an amount to be proven at trial in excess of $75,000;

B.    An award of attorneys' fees and costs in an amount to be proven at trial;

C.    An award of punitive damages in an amount to be proven at trial;

D.    An award of post-judgment interest;

E.    An award of costs of litigation; and

F.    Such other relief as the Court deems just and proper.

Dated:  December 22, 2025        By:*/s/ Nicole Jennings Wade*

Nicole Jennings Wade
State Bar No. 390922
nwade@wgwlawfirm.com

Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@wgwlawfirm.com

G. Taylor Wilson
State Bar No. 460781
twilson@wgwlawfirm.com

WADE, GRUNBERG & WILSON, LLC
729 Piedmont Avenue N.E.
Atlanta, GA 30308
Telephone:   (404) 600-1153
Facsimile:    (404) 969-4333

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts so triable.

Dated:  December 22, 2025          By:  */s/ Nicole Jennings Wade*

Nicole Jennings Wade
State Bar No. 390922
nwade@wgwlawfirm.com

Jonathan D. Grunberg
State Bar No. 869318
jgrunberg@wgwlawfirm.com

G. Taylor Wilson
State Bar No. 460781
twilson@wgwlawfirm.com

WADE, GRUNBERG & WILSON, LLC
729 Piedmont Avenue N.E.
Atlanta, GA 30308
Telephone:    (404) 600-1153
Facsimile:    (404) 969-4333

*Attorneys for Plaintiff*

## <u>CERTIFICATION UNDER L.R. 7.1D.</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1D, the undersigned counsel certifies that this COMPLAINT FOR DEFAMATION is a computer document and was prepared in Times New Roman 14-point font, as mandated in Local Rule 5.1C.

This 22nd day of December, 2025.

*/s/ Nicole Jennings Wade*
Nicole Jennings Wade
